# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC.; LEAGUE OF WOEN VOTERS OF FLORIDA EDUCATION FUND; AND FLORIDA STATE CONFERENCE OF THE NAACP, | |
| *Plaintiffs,* | **CASE. NO.** <u>click to insert case number</u> |
| **v.** | |
| RON DESANTIS, in his official capacity as Governor of the State of Florida, and CORD BYRD, in his official capacity as Secretary of the State of Florida | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs, the League of Women Voters of Florida, Inc., the League of Women Voters of Florida Education Fund (collectively "LWVFL" or "the League"), and the Florida State Conference of the National Association for the Advancement of Colored People ("FL NAACP"), respectfully submit the following memorandum of law in support of its emergency

motion for a temporary restraining order and order to show cause why a temporary restraining order and/or preliminary injunction should not issue, requiring the State of Florida to reopen the voter registration for an additional 10 days. Defendants' refusal to extend the deadline—notwithstanding the inability of thousands of Floridians to register because of Hurricane Helene and Hurricane Milton—violates the First and Fourteenth Amendments to the U.S. Constitution.

## I.  Introduction

In the absence of relief from this Court, there is no question that tens of thousands of Floridians will be disenfranchised.

As many Floridians are attempting to recover from Hurricane Helene—including LWVFL and FL NAACP members—they face another calamity: Hurricane Milton. This Category 5 hurricane is scheduled to hit Florida on Wednesday. Governor DeSantis perfectly illustrated the harm the LWVFL and FL NAACP members and other Floridians face being between the recovery effort of one hurricane and another soon arriving when he explained at a Monday news conference it was "imperative for debris from Helene to be cleared" so that "pieces" do not become "projectiles" when Milton arrives. "Hurricane Milton is a Category 5. *See* "Hurricane Milton is a Category 5. Florida orders evacuations and scrambles to clear Helene's debris," AP News, October 7, 2024, *available at*

https://apnews.com/article/hurricane-milton-helene-florida-

557c5c512135e0a8661b298e45e17c92.

On Saturday, October 5, 2024, Governor DeSantis declared a state of emergency for almost all of Florida's 67 counties. Early on Monday, October 7, 2024, Governor DeSantis told Floridians in the path of oncoming Hurricane Milton to evacuate. Monday, October 7, 2024, was also the final day for voter registration in Florida for the November elections.

LWVFL and FL NAACP requested the Governor to extend the voter registration deadline on October 4 to ensure the "right of aspiring eligible voters to register and to have their votes counted," *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1259 (N.D. Fla. 2016), but the Governor declined. The Governor has forced the LWVFL and FL NAACP members and others to choose between their safety and their right to vote. This need not be the case. In 2016, this Court ordered then-Governor Rick Scott to extend the deadline by 24 hours when Florida faced a similar threat to voter registration access in the wake of Hurricane Matthew. *Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016). And more recently, South Carolina extended the voter registration period in response to Hurricane Helene.

Governor DeSantis's refusal to extend the registration deadline does not promote any legitimate state interests—let alone one that justifies the certain disenfranchisement of tens of thousands of Floridians. Moreover, Governor

3

DeSantis's failure to extend the deadline will disproportionately and unfairly burden the rights of Floridians with the most to lose: those still recovering from Hurricane Helene and those directly in the path of Hurricane Milton. Simply put, Floridians—including LWVFL and FL NAACP members—should not be forced to forfeit their voting rights just because they have to evacuate from a Category 5 hurricane. The Court should therefore order Defendants to reopen the voter registration for an additional 10 days.

## II.    Statement of Facts

### A. Voter Registration in Florida and the Importance of the Final Days of the Voter Registration Period.

Florida does not offer same-day registration on election day. Thus, Floridians must complete a paper Voter Registration Application and deliver it, either in person or by mail, to the office of the County Supervisor of Elections, the Florida Division of Elections, or a third-party voter registration agency. *See* Fla. Stat. § 97.053. Floridians also may submit a voter registration application online. Fla. Stat. § 97.0525. The deadline for delivering voter registration forms for the upcoming general election was Monday, October 7—two days after Governor DeSantis declared a state of emergency. *See id*. §§ 97.053, 97.055, 97.0555.[1]

---

[1] *See also* Fla. Dep't of State, Div. of Elections, *2024 Florida Voter Registration and Voting Guide* (March 1, 2023), https://files.floridados.gov/media/706369/voterregvotingguide-eng-2024-election-cycle-20230120-final.pdf (last visited October 7, 2024).

Completed registration applications submitted in person are considered delivered at the time the applications are *actually* delivered to the elections official. *See* Fla. Admin. Code. Ann. r. 1S-2.042(7)(a). Applications delivered by mail are considered delivered as of the date they are postmarked, if a clear postmark is present on the mailing envelope. *Id*. If no clear postmark is present, then the date of delivery for mailed application is the actual date of receipt. *Id*. There is no legal distinction between online applications and those submitted in person, by mail, or by other methods. Fla. Stat. § 97.0525.

Interest in an impending election reaches its zenith as Election Day approaches. Because of this LWVFL holds more registration events in the days and weeks leading up to the voter registration deadline. And, Florida typically sees a surge in voter registration in the days leading up to the voter registration deadline. Registrations submitted in Florida in the week leading up to book closing typically account for 13 to 20 percent of new registrations in presidential years, according to a 2008 analysis. *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Emergency Motion for a Preliminary Injunction and Order to Show Cause, *League of Women Voters v. Scott*, et al. (Case No. 4:16-cv-00633 (N.D. Fl., Tallahassee Division, 2020)). Based on past voter registration data, the bulk of the registrations during that period are submitted in the final days of the voter registration period.

Consistent with that data, estimates from 2020 indicate that approximately 202,471 new voters were registered during the last few days of voter registration. *See* Fla. Dep't of St., Div. of Elections, Voter Registration Reports, https://dos.fl.gov/elections/data-statistics/voter-registration-statistics/voter-registration-reports/#:~:text=Voter%20Registration%20-%20By%20County%20and%20Party%20(year-to-date)%20%E2%80%93 (last visited Oct. 8, 2024). This is roughly as many voters registered in the preceding month—202,471 new voters registered in the last 5 days of voter registration compared to a total of 228,635 new registrants throughout the entire month of September. Though more than half registered online (112,944), almost 40% of those newly registered did so either by mail, at the DMV or in person at the supervisor of elections offices.

## B. Hurricane Helene Significantly Interfered with and Disrupted Voter Registration in Affected Areas.

On September 26, 2024, at 11:10 pm, Hurricane Helene made landfall near Perry, Florida, just east of the Aucilla River's mouth. With winds reaching 140 mph, the Category 4 storm ranked among the most powerful to strike the United States. *See*, National Environmental Satellite, Data, and Information Service (NESDIS), *Hurricane Helene Makes Landfall in Florida* (Sept. 27, 2024) https://www.nesdis.noaa.gov/news/hurricane-helene-makes-landfall-florida#:~:text=On%20Sept.%2026,%202024,%20at%2011:10%20p.m.%20EDT,

%20NOAA%E2%80%99s%20GOES. Storm surges along areas of the Florida coast exceeded 15 feet, and six coastal towns and cities on Florida's Gulf Coast broke records. *See* Kevin Crowe, Anna Phillips, John Muyskens, and Brady Dennis, *These Six Places Saw Their Worst Storm Surge Ever During Helene*, The Washington Post, (Sept. 28, 2023) https://www.washingtonpost.com/climate-environment/2024/09/28/helene-storm-surge-city-impact/. States of emergency were declared in 61 out of Florida's 67 counties. Office of the Governor, *Executive Order Number 24-209*, State of Florida, (Sept. 24, 2024) https://www.flgov.com/2024/09/24/memorandum-executive-order-number-24-209-emergency-management-amending-execuive-order-24-208-potential-tropical-cyclone-nine/. The state also issued voluntary and mandatory evacuation orders in 13 counties. See CBS News, *Hurricane Helene prompts evacuations in Florida,* (Sept. 25, 2024) https://www.cbsnews.com/news/tropical-storm-helene-florida-evacuations/.

Upon landfall, the storm inundated and, in some cases, wiped out, numerous communities. Broad swaths of the state suffered significant and devastating impacts. Ninety percent of the homes in Keaton Beach, Florida, have been "washed away." Adeel Hassan and Isabelle Taft, *What we Know about Helene's Destruction so Far*, The New York Times (Sept. 29, 2024) https://www.nytimes.com/2024/09/29/us/helene-destruction-florida-north-

carolina.html. Much of Cedar Key, Florida was similarly flooded, with many residences destroyed. *See* Kevin Crowe, Anna Phillips, John Muyskens, and Brady Dennis, *These Six Places Saw Their Worst Storm Surge Ever During Helene*, The Washington Post, (Sept. 28, 2023) https://www.washingtonpost.com/climate-environment/2024/09/28/helene-storm-surge-city-impact/.

By 11:45 p.m., power outage maps showed more than 200,000 Florida residents without power in Pinellas Couty alone, and more than 900,000 statewide. https://www.usatoday.com/story/news/nation/2024/09/26/florida-power-outage-map/75382108007/.

On October 3, 2024—four days after the storm's arrival in Florida--Defendant DeSantis issued a broad executive order addressing many of Helene's impacts across Florida's eleven "Affected Counties." Executive Order Number 24-212, Office of the Governor, State of Florida (Oct. 3, 2024) https://www.flgov.com/wp-content/uploads/2024/10/EO-24-212.pdf. In the order, Defendant DeSantis acknowledged that the Hurricane had "significantly affected communities across Florida, resulting in loss of lives, evacuation of families from their homes, widespread destruction and damage to homes and businesses, significant disruption in utilities and telecommunications, and substantial physical damage to roads, highways, bridges a, and other critical infrastructure . . ." *Id.* In the order, the governor also recognized that Hurricane Helene impacted some parts of the state

much more than others, noting that "the effects of Hurricane Helene have had a *uniquely significant* and continuing impact on Charlotte, Citrus, Dixie, Hernando, Hillsborough, Lee, Levy, Madison, Manatee, Pasco, Pinellas, Sarasota, and Taylor Counties (the Affected Counties) . . ." *Id.* (emphasis added).

Hurricane Helene occurred less than two weeks before the voter registration deadline in Florida. In affected areas of the state, for days, widespread and ongoing power outages prevented citizens from accessing voter registration forms online. Also, in affected areas of the state, supervisors of elections offices were closed starting from September 25 through to September 30. For all practical purposes, voter registration was unavailable in numerous counties affected by Hurricane Helene between September 25 – September 27, and in a number of those counties, due to damage and displacement, access to voter registration was significantly reduced well into the following week.

Hurricane Helene also forced organizations such as LWVFL, involved in promoting voter registration, to cancel planned voter registration drives. For example, in Leon County, LWVFL was forced to cancel three large community and campus events and several library events because of Helene. *See* Declaration of Cecile Scoon (Exhibit 3).

In Sanibel, Florida, in the wake of Hurricane Helene, LWVFL members had to reschedule an election related event they had planned for the week of September

23. Impacted by about 5 feet of storm surge across the island, one member commented, "[O]ur members are definitely not currently focused on the election." *Id.*

On October 4, LWVFL, FL NAACP and other organizations supportive of voting rights sent a letter to the Governor and state officials expressing concerns about Hurricane Helene's impact on Floridians' ability to participate in the 2024 General Election. Specifically, the letter requested, among other things, that the Defendants "Extend the Voter Registration Deadline from October 7 to midnight on October 15 to allow affected citizens more time to register to vote." The letter urged, "Floridians have lost homes and loved ones to Hurricane Helene, and voter registration will not have been a top priority in the immediate aftermath of the storm, even if they had planned to vote in the November election. No one should miss out on voting due to a national disaster." *See* Letter to Governor DeSantis, et al. Re: Emergency Actions to Ensure Voting Access after Hurricane Helene, October 4, 2024 (Exhibit 1).

The Florida Supervisors of Elections (FSE) also sent a letter to the Governor warning that "a significant number of early voting sites and polling locations have been damaged or otherwise rendered unusable, a significant number of voters have been displaced, and a significant number of poll workers may be unavailable for the foreseeable future." *See* Mitch Perry, *DeSantis says he's likely to allow supervisors*

*of elections to make changes in light of Helene*, Florida Phoenix, (Oct. 2, 2024)

https://floridaphoenix.com/2024/10/02/desantis-says-hes-likely-to-allow-

supervisors-of-elections-to-make-changes-in-light-of-helene/.

   Though the Governor did implement multiple emergency actions related to

election administration, he notably failed short of extending the voter registration

deadline.

### C. Even Though it Has Not Yet Arrived in Florida, Hurricane Milton Has Already Interfered with and Disrupted Voter Registration.

   Not even a week after Hurricane Helene had devastated the southeastern

U.S., Florida was once again on high alert. Still reeling from Hurricane Helene,

Florida is bracing for a second major storm—Hurricane Milton. Rick Davis, a

meteorologist at the National Weather Service's Tampa Bay office, commented,

"This is a very serious situation. It's going to affect a lot of people in the state of

Florida." Meghan Bartels, *Still Reeling from Hurricane Helene, Florida Braces for*

*Second Major Storm*, Scientific American (Oct. 7, 2024)

https://www.scientificamerican.com/article/hurricane-milton-spins-toward-florida-

as-a-category-5-storm/.

   With Hurricane Milton rapidly approaching, Defendant DeSantis declared a

state of emergency in 35 counties on Saturday, October 5, which he expanded to

54 counties shortly before the arrival of the storm on Monday, October 7. *See* C.A.

Bridges, *Gov. DeSantis declared state of emergency for Hurricane Milton*,

Tallahassee Democrat (Oct. 7, 2024)

https://www.tallahassee.com/story/news/hurricane/2024/10/07/desantis-state-of-emergency-florida-hurricane-milton/75550378007/.

By midday yesterday, Hurricane Milton's maximum sustained winds were blowing at 175 miles per hour; the previous morning its winds had been just 65 miles per hour.

In speaking with CNN Monday, Tampa Mayor Jane Castor warned that there has never been a storm like Milton, and anyone staying in the mandatory evacuation zones risked their lives: "I can say without any dramatization whatsoever, if you choose to stay in one of those evacuation areas, you're going to die." *See* CNN, *'You're Going to Die': Tampa Mayor Issues Dire Warning About Staying in Milton Evacuation Zone*, (Oct. 7, 2024) https://www.youtube.com/watch?v=PBuXst1yx2w.

Several counties on Florida's west coast are under mandatory evacuation orders, including Charlotte, Citrus, Collier, Hernando, Hillsborough, Lee, Levy, Manatee, Pasco, Pinellas and Volusia, several of which have been under mandatory evacuation since Monday. Clay, DeSoto, Dixie, Glades, Hardee, Lake, Marion, Miami-Dade, Okeechobee, Putnam, Sarasota, and Sumter counties have been given voluntary evacuation orders. *See* Florida Division of Emergency Management,

*Evacuation Orders*, https://www.floridadisaster.org/evacuation-orders (last visited Oct. 7, 2024)https://www.foridadisaster.org/evacuation-orders/.[1]

Florida Division of Emergency Management Director Kevin Guthrie publicly urged Floridians to comply with these orders, stating "If they have called for your evacuation order, I beg you, I implore you, to evacuate. Drowning deaths due to storm surge are 100% preventable if you leave." See Cody Butler, *Florida leaders urge people to listen to evacuation orders ahead of Milton*, WCJB (Oct. 7, 2024) https://www.wcjb.com/2024/10/07/florida-leaders-urge-people-listen-evacuation-orders-ahead-milton/. Defendant DeSantis also urged those in affected areas to evacuate, stating, "You're just not going to be able to beat Mother Nature. *Id.*

And Florida residents, fearing for their safety, swiftly complied. A Florida Traffic Alert issued on October 7 at 3:28 pm noted that "motorists are experiencing significant traffic delays on I-75 and I-275 as residents evacuate ahead of Hurricane Milton." *See* Liz Shultz, *Florida Traffic Alert: Heavy Congestion on I-75 and I-275 North Due to Hurricane Evacuations*, (Oct. 7, 2024) https://www.msn.com/en-us/travel/news/florida-traffic-alert-heavy-congestion-on-i-75-and-i-275-north-due-to-hurricane-evacuations/ar-AA1rQGIP?ocid=BingNewsSerp. At a press briefing the morning of October 8, Defendant opined, citing additional roadway openings, that Florida highways that usually experience a significant amount of traffic were even more congested than usual on Monday. He expressed, "Yesterday saw a lot of

people on the road…it was about 150% more than what we would typically have…that resolved at about 1:00 am [Tuesday morning]." *See* C-SPAN, *Florida Gov. DeSantis Holds Hurricane Milton Briefing*, (Oct. 8, 2024) https://www.c-span.org/video/?539034-1/florida-gov-desantis-holds-hurricane-milton-briefing#:~:text=October%208,%202024%20Florida%20Gov.%20DeSantis%20Holds%20Hurricane%20Milton.

Seeing how disruptive preparing for the storms onslaught was becoming to the state's registration efforts, yesterday morning, LWVFL, FL NAACP, and other voting rights organizations once again urged Governor DeSantis to take action to extend the voter registration deadline.  In the press release, the groups encouraged the Defendants and other state official to take Floridians' concerns seriously. They proclaimed, "It is unreasonable to expect people to focus on registering to vote with multiple storms wreaking havoc in Florida. Floridians who are still recovering from Hurricane Helene are today preparing for Milton; they can not and should not be expected to have to meet a voter registration deadline." *See* Voting Rights Groups Call for Extension of Florida Voter Registration Deadline, October 7, 2024 (Exhibit 2). Understanding the impact that the storm would have on new voters, the release expressed, "It is unfair to disenfranchise newly arrived Floridians, people who have just reached the legal age to vote, and others who need to register to voter in Florida due to the impacts of natural disasters that are beyond their control." *Id.*

In the last few days and especially yesterday—the last day of voter registration—preparations for Hurricane Milton's arrival have completely disrupted voter registration activities in affected areas. Hurricane Milton is compounding Helene's effects, forcing the state's residents to once again turn their attention to evacuation and storm preparation.

At least one supervisor office was closed yesterday. According to the Lee County website, all Lee County elections offices will be closed Monday, October 7, 2024 through Thursday, October 10. *See* Lee County Elections at https://www.lee.vote/ (last accessed on Oct. 8, 2024).

In affected areas, widespread school and university closings have interfered with voter registration efforts. For example, according to State Representative Anna Eskamani, "USF canceled all in-person classes today. This was going to be a major outreach day on college campuses for the VR (voter registration) deadline but back-to-back hurricanes, along w/the intensity of #Milton has dampened those efforts."

Preparing for Hurricane Milton has forced many of LWVFL's 29 chapters to cancel their voter registration efforts yet again. LWVFL local presidents in Hillsborough and Pasco noted, "Yes, we had an event scheduled for the University of Florida for today for the final day of registering to vote that was canceled because their campuses closed due to Milton. A panel event on voting scheduled for this evening at USF's Honors College was also cancelled." In Volusia County, Port

Orange cancelled a major community event where they were scheduled to have a voter service table, as well as various voter education presentations. In the Tri-Villages, LWVFL cited having to cancel a voter information event due to flooding, and a voter education presentation scheduled for Wednesday has also been canceled. *See* Declaration of Cecile Scoon (Exhibit 3).

Members of the FL NAACP, predominantly voters and registrants of color, are especially impacted throughout the state. Closures of clerk of courts and courthouses during Helene and ahead of Milton have impacted a variety of events that are necessary prerequisites to registering to vote, such as naturalization ceremonies and payment of all legal financial obligations by returning citizens.

In the areas most severely impacted by the two storms—such as Lee County or the western part of Manatee County where there are people unaccounted for who still have no access to USPS mail delivery—extreme damage to roads, homes, and the power grid make registering to vote exceptionally challenging.

**D. Ignoring the Disruptive Effect That Two Hurricanes Have Had on Voter Registration in Florida, Defendant DeSantis Has Chosen Not Exercise His Discretion to Extend the Voter Registration Period.**

Defendant DeSantis has broad authority pursuant to Fla. Stat. § 252.36(6)(a) to make election administration changes in the event of an emergency. Accordingly, he may:

Suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of any state agency, if strict compliance with the provisions of any such statute, order, or rule would in any way prevent, hinder, or delay necessary action in coping with the emergency. Section 252. 36(6)(a), Fla. Stat.

He has used this authority countless times in the face of natural disasters to make broad changes to election administration, including an Order issued during Hurricane Helene. *See, e.g.* Executive Order Number 24-212, Office of the Governor, State of Florida (Oct. 3, 2024), EO-24-212.pdf (flgov.com).

Defendant DeSantis's predecessor, Gov. Rick Scott, extended the voter registration deadline for one day after Hurricane Michael plowed through the Florida panhandle, and Defendant DeSantis himself extended voter registration until the day after the deadline in 2020 after the online voter registration portal crashed.

Today, Florida stands alone in its refusal to protect its voters. In the same breath in which he urged residents to evacuate and prepare for one of the largest hurricanes in decades, Defendant DeSantis refused to extend the voter registration deadline, choosing instead to force residents to choose where to focus their attention as the storm draws nearer. Other states affected by natural disasters, including South Carolina after impact of Hurricane Helene, have already extended or reopened registration periods, thereby expanding and protecting the franchise.

17

### III.   Argument

#### A. Preliminary Injunction Standard

"A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1289-90 (11th Cir. 2010). "To obtain such relief, the moving party must show (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.org v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). *See also Forsyth Cnty.* v. *U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting *Siegel* v. *LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*)). The standard for a temporary restraining order is essentially the same as for a permanent injunction. *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 (11th Cir. 2015).

#### B. Plaintiff is Likely to Succeed on the Merits of Its Claims.

##### a.   Defendants' Actions Impose a Severe Burden on the Right to Vote Without Advancing any State Interest.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."

*Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Accordingly, election laws burdening that fundamental right are subject to searching judicial scrutiny.

In *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), the Supreme Court laid out a "flexible standard" to resolve constitutional challenges to state election laws that burden voting rights. *See Anderson*, 460 U.S. at 789. "A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 433-34 (quotation marks and citation omitted).

When a regulation subjects the right to vote to a "severe" restriction, the restriction "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992). Less severe burdens remain subject to balancing. But "[h]owever slight" the burden on the right to vote "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181,191 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288-89).

The role of a federal court is not to second-guess the wisdom of the policy choices of state officials running elections in states of emergency, but rather to "take

19

steps that help avoid the impingement on citizens' rights to exercise their voting franchise as protected by the United States Constitution and federal statutes." *DNC v. Bostelmann*, 451 F. Supp. 3d 952, 958 (W.D. Wisc. 2020) (finding good cause to extend absentee ballot receipt and request deadlines given the Covid pandemic); *see also Mi Familia Vota v. Hobbs*, 492 F. Supp. 3d 980, 986-89 (D. Ariz. 2020) (extending voter registration deadline by 22 days upon showing that voter registration groups were thwarted in their normal voter registration outreach during Covid pandemic and that access to registration was diminished for Arizonans).

Here, if the October 7 voter registration deadline is not extended, then thousands and potentially tens of thousands of Floridians will be completely disenfranchised. Many have been required to evacuate ahead of Hurricane Milton and have been unable to return since Helene. Power and internet outages, as well as closures of government office buildings, including supervisor of elections offices and post offices have impacted registration. Indeed, the postal service itself warns that "Hurricanes Helene and Milton, flooding, and severe weather events in the Southeastern and Mid-Atlantic U.S. (FL, GA, SC, NC, and VA) may impact the processing, transportation, and delivery of mail and packages." United State Postal Service Alerts, October 8, 2024, https://about.usps.com/newsroom/service-alerts/.

"[T]he basic truth [is] that even one disenfranchised voter—let alone several thousand—is too many[.]" *League of Women Voters of N.C. v. N. Carolina*

20

("LOWV"), 769 F.3d 224, 244 (4th Cir. 2014). As a result, courts routinely hold that laws precluding citizens from voting impose undue burdens on core constitutional rights. *See, e.g., Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016) (refusal to extend voter registration deadline post hurricane burdened right to vote); *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1331 (11th Cir. 2019) (denying motion to stay district court's preliminary injunction finding that signature match requirement unduly burdened vote-by-mail voters' right to vote); *Bostelmann*, 447 F. Supp. 3d at 767 (finding that deadline for online registration unduly burdened citizens' right to vote).

Defendants' refusal to extend Florida's October 7 voter registration deadline in the wake of back-to-back hurricanes impacting the state unduly burdens Floridians' right to vote. Given the likelihood of total disenfranchisement for thousands of Floridians, Defendants must come forward with an interest that is "sufficiently weighty" to justify enforcing the October 7 deadline, and their interest in enforcing that deadline must outweigh the burden that failing to extend the registration deadline has on the right to vote. Having failed to assert *any* valid justification for its arbitrary refusal to extend the deadline, Defendants cannot meet this high burden.

The bottom line is that contrary to the Governor's suggestions that nothing interfered with their ability to register to vote, nothing could be further from the

truth. Hurricanes Helene and Milton unexpectedly upended the crucial last couple of weeks of voter registration, when tens of thousands of people usually register to vote. *See* Declaration of Cecile Scoon (Exhibit 3). The suggestion that Floridians living in storm-affected areas should be punished because a natural disaster prevented them (but not other Floridians) from taking full advantage of the voter registration period is both offensive and illogical.

The Governor has failed to articulate any credible and legitimate reason not to extend the registration period to address the injury to voters, let alone one that outweighs the burden on the right to vote.  Other similarly situated governors facing impacts from Hurricane Helene have seen fit to extend the deadline for registration. In the past, the court has also required extensions due to hurricane impacts, *see, e.g., Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016).  Governor DeSantis himself has extended the voter registration deadline, when faced with a technical issue beyond control.

Nonetheless, the Governor remains resistant to accommodating voters.

**Defendants' Actions Violate the Equal Protection Clause**

Hurricane Milton will not affect the entirety of the State of Florida equally. Central Florida, especially coastal areas, will be most impacted, and 23 counties in mostly central and south Florida, as discussed *infra*, are under either mandatory or voluntary evacuation orders.

Defendants' refusal to extend the October 7 deadline therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. As the Supreme Court has explained, "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, *by later arbitrary and disparate treatment, value one person's vote over that of another*." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (emphasis added).

But that is precisely what Defendants propose to do here: enforce the October 7 deadline throughout the entire State, without regard to a massive storm that makes the deadline unreasonable in at least 23 counties, thereby resulting in "arbitrary and disparate treatment" of similarly situated voters based on nothing more than the happenstance of their residences.

Here again, Plaintiff's claim is evaluated under the flexible standard of the *Anderson-Burdick* test. *See Ohio Democratic Party v. Husted*, 834 F.3d 620, 626-27 (6th Cir. 2016). Governor DeSantis's refusal to extend the voter registration deadline to account for the destruction wrought by Hurricane Milton will result in the disenfranchisement of thousands of voters. That severe burden on the fundamental right to vote cannot be justified by the minor administrative inconvenience (assuming any such inconvenience even exists) of extending the October 7 deadline

23

an additional 10 days. Plaintiff is therefore likely to prevail on Count II of its Complaint.

### C. Plaintiff Satisfies the Other Preliminary Injunction Factors

#### a. An injunction is necessary to avoid irreparable harm.

There is no genuine dispute that the harm threatened here is irreparable. If Florida voters are hindered from registering because of Hurricane Milton and Defendants refuse to extend the registration deadline, there is no way to cure that disenfranchisement. "[O]nce the election occurs, there can be no do-over and no redress." *LOWV*, 769 F.3d at 247. Thus, courts have long recognized that when an "abridgment to the voters' constitutional right to vote" is imminent, "irreparable harm is presumed and no further showing of injury need be made." *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000); see also *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("*OFA*") (abridgement of right to vote constitutes irreparable harm); *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997) (same); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (same).

#### b. The balance of hardships weighs in favor of an injunction.

The balance weighs heavily in Plaintiff's favor because, beyond any minor administrative inconvenience, it is difficult to see how Defendants would suffer any harm if they were required to continue accepting registration applications for an

additional ten days. Especially with similar relief being issued before. *See Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016).

On the other side of the ledger, if deadline is not extended, thousands of voters risk total disenfranchisement. Under those circumstances, equity plainly favors Plaintiffs. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) (stating "administrative convenience" cannot justify the deprivation of a constitutional right). Defendants may argue that Plaintiffs are understating the burdens of extending the deadline. But that argument is belied by the facts. Many other states have adjusted election and voter registration procedures in analogous circumstances. For example, in 2005, in the wake of Hurricane Katrina, Governor Blanco of Louisiana used executive powers to postpone several elections (and their respective qualifying periods).[2] Further, in South Carolina, due to damages from Hurricane Helene, the same storm that made landfall in Florida just a day earlier, the deadline to register has been extended until Monday, October 14, 2024. "SC extends voter registration because of Hurricane Helene," The Sun News, October 7, 2024 https://www.thestate.com/news/state/south-carolina/article293621639.html. This is a 10-day extension from the original deadline of October 4.

---

[2] *See* Louisiana Register, Vol. 32, No. 02, at 187, *Executive order No. KBB 2005-36* (last visited October 7, 2024). https://www.doa.la.gov/media/oyedj0yz/0602.pdf

### c. An injunction is in the public interest.

The public has a paramount interest in elections where every eligible resident may cast an effective vote. See *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *see also LOWV*, 769 F.3d at 248 ("[t]he public has a 'strong interest in exercising the fundamental political right to vote."); *OFA*, 697 F.3d at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible."). The affected voters are those whose lives have already been interrupted (or worse) by hurricanes Helene and Milton. Under the circumstances, an injunction allowing these voters to participate in the upcoming election would only promote the public interest. As discussed above, other states have made significant efforts in the wake of Hurricane Helene and other natural disasters to ensure that their citizens are able to vote. Their actions make clear that the modest relief sought here serves the public interest.

### D. Conclusion

For the reasons stated herein, Plaintiff respectfully requests that the Court enter a preliminary injunction requiring Defendants, their officers, employees, and agents, all persons acting in active concert or participation with the Defendants, or under any Defendants' supervision, direction, or control, and all other persons within the scope of Federal Rule of Civil Procedure 65, to extend the deadline for delivery of voter registration applications for an additional 10 days.

Dated: October 8, 2024                    Respectfully submitted,

                                           /s/ *Matletha Bennette*
                                          Matletha Bennette, Fla. Bar No. 1003257
                                          Krista Dolan, Fla. Bar No. 1012147
                                          SOUTHERN POVERTY LAW CENTER
                                          PO Box 10788
                                          Tallahassee, FL 32302-2788
                                          850-408-4840
                                          Matletha.bennette@splcenter.org
                                          Krista.dolan@splcenter.org

                                          Rose Murray*
                                          Ahmed Soussi*
                                          SOUTHERN POVERTY LAW CENTER
                                          201 St. Charles Avenue, Suite 2000
                                          New Orleans, LA 70170
                                          Rose.murray@splcenter.org
                                          Ahmed.soussi@splcenter.org

                                          Bradley Heard*
                                          Avner Shapiro*
                                          SOUTHERN POVERTY LAW CENTER
                                          1101 17th St NW Ste 550
                                          Washington, DC 20036
                                          bradley.heard@splcenter.org
                                          Avner.shapiro@splcenter.org

                                          **Pro hac vice* motion forthcoming

                                          **Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2024, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing to the counsel of record in this case.

/s/ *Matletha Bennette*

Matletha Bennette, Fla. Bar No. 1003257
SOUTHERN POVERTY LAW CENTER
PO Box 10788
Tallahassee, FL 32302-2788
850-408-4840
matletha.bennette@splcenter.org

*Attorney for Plaintiffs*

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned certifies on this 8th  day of October, 2024, that this document complies with word limits set forth in Rule 7.1(F), N.D. Fla. Loc. R., and contains 5,423 words which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

/s/ *Matletha Bennette*

Matletha Bennette, Fla. Bar No. 1003257
SOUTHERN POVERTY LAW CENTER
PO Box 10788
Tallahassee, FL 32302-2788
850-408-4840
matletha.bennette@splcenter.org

*Attorney for Plaintiffs*